## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ANTIONE STEVENS, | : | |
| | : | Civil Action No. 13-2831 (CCC) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| CHARLES WARREN, et al., | : | |
| | : | |
| Respondents. | : | |

**CECCHI, District Judge:**

Petitioner Antione Stevens, confined at the East Jersey State Prison in Rahway, New Jersey, files the instant Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging a conviction and sentence imposed by the State of New Jersey for possession with intent to distribute heroin in close proximity to a school and a public park, and related charges. Respondents have filed a Response, and Petitioner did not file a traverse after being afforded the opportunity, so the Petition is now ripe for disposition. For the reasons stated below, the Court denies the Petition.

### I. FACTUAL BACKGROUND

For the purposes of this Opinion, the Court relies on the following findings of fact by the state appellate court on direct appeal:

> As part of a narcotics investigation, Anthony Goodman, a Jersey City police officer, was performing surveillance on September 29, 2006, at the intersection of Stegman Drive and Martin Luther King Drive ("MLK Drive"). That neighborhood contains a mixture of residential and commercial buildings. It was considered by law enforcement to be a high-drug area where narcotics arrests were often made.

Officer Goodman began his surveillance at 10:50 a.m. Shortly thereafter, he began to focus on two black males who were standing and conversing in front of a barbershop on MLK Drive. He identified the two males in court as codefendants Damian Haynes and Kendall McCord. Goodman then noticed Haynes walk into a nearby liquor store with another individual. Apparently, no drug transaction occurred at that point, and Haynes left the store without purchasing anything. This scenario repeated two more times. Goodman asserted that he had an unobstructed view of the two establishments. He was situated approximately forty feet from the liquor store and 150 to 200 feet from the barbershop.

Following these initial observations, Officer Goodman began to focus on the area with binoculars. He noticed a tall black male, whom he later identified as defendant, approach. Haynes entered the barbershop while defendant and McCord waited outside. According to Goodman, McCord yelled, and at the same time made a hand gesture, asking for "two more." Given the officer's distance from the store, McCord's shout was not "clear as day" to Goodman; however, the officer insisted that he heard what McCord had shouted.

Haynes then left the barbershop and entered the liquor store with defendant. Once they were inside, Officer Goodman saw Haynes give defendant a small object via a "hand-to-hand exchange." Defendant gave Haynes what appeared to be currency in return. According to his testimony, Goodman was able to observe this because the store had large glass windows, which allowed him to see the upper bodies of the persons inside. Although there were promotional advertisements on the windows, Goodman stated that they did not block his view of the interactions between defendant and Haynes.

Based on these observations, Officer Goodman believed that he had witnessed a drug transaction because: (1) Haynes repeatedly left the liquor store without purchasing anything; (2) money had been exchanged between defendant and Haynes for a small package; and (3) defendant and Haynes left a public area and went into the liquor store, apparently desiring to transact their business in a more private setting. Goodman was unable, however, to identify the particular contraband that had been handed to defendant.

After the apparent hand-to-hand drug transaction was completed, defendant and McCord entered a green Chrysler Sebring. McCord drove the car, with defendant accompanying him in the front passenger seat. Haynes remained at the barbershop. Meanwhile, Officer Goodman alerted perimeter police units that were waiting nearby. Goodman gave them a description of the car, the passengers inside, and the direction in which McCord was driving.

Michael Burgess and Alexander Rivera, two of the Jersey City police officers involved in the perimeter duty, received Officer Goodman's call. They followed the Sebring and eventually pulled it over near the intersection of Bidwell Street and MLK Drive. Both Officers Burgess and Rivera were driving unmarked

cars. They were wearing civilian clothes, although their police badges were readily viewable hanging from their necks.

Officer Burgess and another police officer approached the driver's side of the Sebring. Simultaneously, Officer Rivera approached the passenger side and identified himself to defendant. Both McCord and defendant were advised that they had been stopped as part of a narcotics investigation. They were asked to step out of the car.

According to Officer Rivera, defendant became "very belligerent" when he was asked to leave the car. Officer Burgess similarly recalled that by the time defendant got out and stood in the car's doorway, he was "real verbally confrontational." He asked the officers why the car had been stopped, and he started to flail his arms about. He also refused to stand still. Noting the disturbance, Officer Burgess came around the car to assist Officer Rivera. As he did so, defendant, according to Rivera, "made a move to take off" and he elbowed Burgess.

At that point, the police decided to handcuff and arrest defendant. Defendant resisted that effort, and, in doing so, kicked Officer Rivera in the shin. Both Rivera and Burgess testified that defendant's actions caused them pain.

Officer Burgess then searched defendant and McCord. From defendant's front pants pocket, Burgess recovered a Newport cigarette box. The box held fifty-four glassine bags containing what laboratory testing later confirmed to be heroin. The logo "Black Flag" was printed on the bags, indicating the identity of the distributor of the [controlled dangerous substance ("CDS")]. Burgess also uncovered from defendant a bag of suspected marijuana as well as $63 in cash. Officer Goodman then called the arresting officers to notify them that Haynes was walking towards the arrest scene. Haynes was subsequently arrested and marijuana was likewise found on his person.

Defendant was indicted and charged with various crimes, including the possession of heroin with the intent to distribute it generally, to distribute it within a school zone, and to distribute it within a park zone. The indictment did not, however, charge defendant with any offenses relating to the marijuana. Additionally, the indictment charged defendant with two counts of aggravated assault of a police officer (count five as to Officer Burgess and count six as to Officer Rivera), and also contained a count for resisting arrest.

At trial, Officer Goodman testified that the apparent drug transactions had occurred within 1000 feet of a school zone, as demarcated by an official map of Jersey City. Subsequently, defense counsel and the State stipulated that the transaction occurred within 1000 feet of a school. Goodman further contended that the drug transaction occurred within 500 feet of a public park, known as Audubon Park. This was based on a certified 500-foot City map.

The State produced two expert witnesses. First, it called William Goebel, a municipal engineer for Jersey City, as an expert in engineering and planning. Goebel testified that the 500-foot map depicted all areas within the City limits that were within 500 feet of a public park. Although that particular map had not been adopted by a City ordinance, Goebel testified that it was based on, or "scaled" from, an "official" City map.

Using the map as a reference, the State contended that the area where the heroin transaction took place was within 500 feet of Audubon Park. Goebel described how the map was made, using a scale that was adopted and certified by the State. He noted that as the supervisor in charge of the map, he had spot-checked the work done by his subordinates in preparing the map. Goebel also referred to an aerial map of Jersey City to demonstrate for the jury that the transaction occurred within 500 feet of Audubon Park.

The State also presented expert testimony from Wally Wolfe, a sergeant with the Jersey City Police Department. Sergeant Wolfe was admitted as an expert in illegal narcotic packaging and distribution. He opined that heroin was commonly sold in small glassine bags that usually contained a logo of the drug's producer. Wolfe concluded that the packaging used to contain the heroin found on defendant was of a type typically used in street sales. Over defendant's objection, Wolfe claimed that, in general, the heroin found in the area of the City where the transaction occurred was "very potent." He acknowledged, however, that the CDS involved here was not tested for its specific potency.

Defendant testified in his own behalf. He admitted that he was present with McCord and Haynes, as described, on September 29, 2006. However, he claimed that no CDS was on his person after he was stopped by the police. Defendant conceded that he asked the police several times why he was being stopped, and was told that the stop was part of an investigation. At the police station following the arrest, defendant was shown the heroin and marijuana the police claimed to have found on his person. However, he denied that the drugs were his own. Defendant conceded that he had been convicted of unlawful possession of a weapon in 1999, a fact which the prosecution used in summations to impeach his credibility.

After considering these proofs, the jury found defendant guilty on all counts charged in the indictment except for count five, aggravated assault of Officer Burgess. Although defendant was found guilty on count seven, resisting arrest, the jury concluded that defendant did not resist through the "use or [threat of] physical force or violence," thereby reducing its severity from a third-degree crime to a disorderly persons offense.

(ECF No. 10-13 at 3-10.)

## II. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). When a claim has been adjudicated on the merits in state court proceedings, a writ for habeas corpus shall not issue unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d); *see also Parker v. Matthews*, 132 S. Ct. 2148, 2151 (2012).

A state-court decision involves an "unreasonable application" of clearly established federal law if the state court (1) identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case; or (2) unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams v. Taylor*, 529 U.S. 362, 407 (2000). Federal courts must follow a highly deferential standard when evaluating, and thus give the benefit of the doubt to, state court decisions. *See Felkner v. Jackson*, 562 U.S. 594, 598 (2011); *Eley v. Erickson*, 712 F.3d 837, 845 (3d Cir. 2013). A state court decision is based on an unreasonable determination of the facts only if the state court's factual findings are objectively unreasonable in light of the evidence presented in the state-court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut

only by clear and convincing evidence. 28 U.S.C. § 2254(e); *see Rice v. Collins*, 546 U.S. 333, 339 (2006) (petitioner bears the burden of rebutting presumption by clear and convincing evidence); *Duncan v. Morton*, 256 F.3d 189, 196 (3d Cir. 2001) (factual determinations of state trial and appellate courts are presumed to be correct).

## III.    DISCUSSION

Petitioner raises six grounds for relief in his Petition: (I) the trial court erred when it failed to confirm that trial counsel had advised him of the consequences of testifying at trial; (II) the trial court erred in denying his motion for judgment of acquittal on the resisting arrest charge; (III) the trial court erred by allowing irrelevant and prejudicial evidence to be presented; (IV) the trial court rendered jury instructions that violated his due process rights; (V) the trial court impinged his right to counsel of his choice; and (VI) cumulative effects of the aforementioned errors deprived him of due process. The Court addresses each ground below.

### A.  Ground I – Failure to Confirm Effective Assistance

The Fifth Amendment guarantees that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V. This right also includes the absolute right by a criminal defendant to testify on his own behalf, if he chooses to do so. *Rock v. Arkansas*, 483 U.S. 44, 51 (1987). The right to testify can be waived, but both the New Jersey Supreme Court and the Third Circuit have held that this waiver must be knowing and voluntary. *United States v. Leggett*, 162 F.3d 237, 246 (3d Cir. 1998); *State v. Savage*, 120 N.J. 594, 630 (1990). Consequently, both courts have held that defense counsel has an obligation to inform and explain to a defendant his right to testify, and failure to do so constitutes ineffective assistance of counsel. *Leggett*, 162 F.3d at 247; *Savage*, 120 N.J. at 630-31.

Here, however, Petitioner is not challenging the advice his counsel rendered with regard to his right to testify—there is no allegation that he received deficient advice from counsel. Instead, Petitioner's challenge is premised on the contention that the trial court failed to confirm that he received adequate advice from counsel. Petitioner raised this claim on direct appeal, and the appellate court held that "when a defendant is represented by counsel, *the trial court is not required* to inform defendant of his right to testify or explain the consequences of that choice." (ECF No. 10-13 at 14-15) (quoting *Savage*, 120 N.J. at 628) (emphasis in the original).

Both the New Jersey Supreme Court and the Third Circuit have held that trial courts have no obligation to confirm that a defendant received constitutionally adequate advice from counsel with regard to his right to testify. *Leggett*, 162 F.3d at 246; *Savage*, 120 N.J. at 630. Given this authority, this Court finds there has not been any constitutional violation, because the trial court was not required to confirm that Petitioner received adequate advice from counsel under either federal or state law. As such, this Court finds that the state court's decision on this claim was a reasonable application of Supreme Court precedent, based on a reasonable determination of the facts, and relief on this ground is denied.

### B. Ground II – Denial of Judgment of Acquittal

Next, Petitioner claims that the trial court erred in denying his motion for judgment of acquittal on his resisting arrest charge because there was no showing that he was explicitly informed by the police officers that he was under arrest. Petitioner raised this claim on direct appeal, and the appellate court held that the New Jersey resisting arrest statute contained no such requirement in order to establish guilt. (ECF No. 10-13 at 17-18.)

Here, Petitioner fails to raise a cognizable claim on federal habeas. "[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the

7

judgment of a State court *only* on the ground that he is in custody in violation of the *Constitution or laws or treaties of the United States*." 28 U.S.C. § 2254(a) (emphasis added). In that regard, the Supreme Court has held that "federal habeas corpus relief does not lie for errors of state law." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (citation and quotation omitted). Because the source of Petitioner's resisting arrest conviction arose out of a state statute, even if the trial court had made a mistake regarding the requirements of such statute, it would be an error of state law, and this Court is without jurisdiction to review the trial court's decision. Therefore, the Court denies relief on this ground.

### C. Evidentiary Rulings

Next, Petitioner claims that the trial court erred by admitting irrelevant and prejudicial evidence at trial, which violated his due process rights. Petitioner challenges a number of evidentiary rulings by the trial court, namely that (1) the inclusion of evidence relating to his possession of marijuana was irrelevant and prejudicial; (2) the admission of testimony by Officer Goodman regarding the 500-foot map used at trial ("Trial Map") without proper foundation violated his right to confrontation; (3) the admission of the Trial Map itself violated his right to confrontation; (4) the admission of testimony regarding the potency of the heroin found, when it was never tested for potency, was improper; and (5) the admission of Officer Goodman's testimony regarding his experience as a narcotics officer was improper. Petitioner raised these claims on direct appeal, and the appellate court, in painstaking detail, found that the trial court did not commit reversible error by admitting any of this evidence at trial. (ECF No. 10-13 at 19-30; ECF No. 10-14 at 1-9.)

### i. General Evidentiary Challenges

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The core concept of due process is protection against arbitrary government action. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). "[T]he Due Process Clause guarantees the fundamental elements of fairness in a criminal trial." *Riggins v. Nevada*, 504 U.S. 127, 149 (1992). In the field of criminal law, "the category of infractions that violate 'fundamental fairness' [is defined] very narrowly based on the recognition that, beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." *Medina v. California*, 505 U.S. 437, 443 (1992). "The Bill of Rights speaks in explicit terms to many aspects of criminal procedure, and the expansion of those constitutional guarantees under the open-ended rubric of the Due Process Clause invites undue interference with both considered legislative judgments and the careful balance that the Constitution strikes between liberty and order." *Id.* As the Supreme Court explained,

> [i]t goes without saying that preventing and dealing with crime is much more the business of the States than it is of the Federal Government, and that we should not lightly construe the Constitution so as to intrude upon the administration of justice by the individual States. Among other things, it is normally within the power of the State to regulate procedures under which its laws are carried out, including the burden of producing evidence and the burden of persuasion, and its decision in this regard is not subject to proscription under the Due Process Clause unless it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.

*Id.* at 445 (quoting *Patterson v. New York*, 432 U.S. 197, 201-02 (1977)). In order to satisfy due process, Petitioner's trial must have been fair, but it need not have been perfect. *United States v. Hasting*, 461 U.S. 499, 508-09 (1983) ("[T]here can be no such thing as an error-free, perfect trial, and [] the Constitution does not guarantee such a trial.").

On habeas review, federal courts only ask whether appropriate procedural safeguards were provided to Petitioner, and do not second-guess whether the state court's evidentiary findings were substantially correct. *See* 28 U.S.C. § 2254(e). "Except in cases involving a violation of a specific constitutional provision such as the Confrontation Clause, this Court may not reverse a state trial judge's action in the admission of evidence unless the evidentiary ruling so infuses the trial with unfairness as to deny due process of law." *Riggins*, 504 U.S. at 147.

Here, the appellate court found that Petitioner had either failed to object to the admission of these pieces of evidence, or was given the full opportunity to challenge these evidentiary rulings at trial. (*See* ECF No. 10-13 at 19-30; ECF No. 10-14 at 1-9.) With the exception of the admission of the Trial Map and related evidence, which implicates a specific constitutional right that the Court addresses below, none of the other evidentiary rulings Petitioner challenges here are related to an enumerated right under the Federal Constitution. As the Supreme Court instructed, federal courts cannot unduly interfere with a State's prerogative in administering criminal justice under the open-ended rubric of the Due Process Clause. The Court will not substitute its own judgment for that of the state court on evidentiary rulings, and nothing here "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Medina*, 505 U.S. at 445. Indeed, Petitioner does not allege that he was not afforded the constitutionally required procedural protection with regard to the admission of the evidence; instead, he challenges the evidentiary rulings on the merits. Accordingly, to the extent that Petitioner is challenging these evidentiary rulings under the general rubric of the Due Process Clause, the Court finds the state court's decision to be a reasonable application of Supreme Court precedent, based on a reasonable determination of the facts.

### ii.    Confrontation Clause Challenge

However, the Court recognizes that Petitioner's challenges regarding the admission of the Trial Map and related evidence can also be construed as making explicit claims under the Confrontation Clause of the Sixth Amendment. The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with witnesses against him[.]" U.S. Const. amend. VI. In American jurisprudence, the right to confrontation is traditionally protected by the rules against hearsay; indeed, as the Supreme Court noted in *Giles v. California*, "it seems apparent that the Sixth Amendment's Confrontation Clause and the evidentiary hearsay rule stem from the same roots." 554 U.S. 353, 365 (2008) (quoting *Dutton v. Evans*, 400 U.S. 74, 86 (1970)). As to be expected, New Jersey has a rule against hearsay. *See* N.J. R. Evid. 802 ("Hearsay is not admissible except as provided by these rules or by other law.").

Petitioner contends that the Trial Map constitutes testimonial evidence, and that its admission by the trial court, without proper foundation by the "author" of the Trial Map, is hearsay and a violation of his right to confrontation. Petitioner raised this claim on direct appeal, and the appellate court held that (1) the Trial Map was not testimonial evidence, (ECF No. 10-13 at 30), and (2) the Trial Map "satisfied the hearsay exceptions for business records, N.J.R.E. 803(c)(6), and public records, N.J.R.E. 803(c)(8)," (*id.* at 29).[1] The appellate court further held that "even if the map is regarded as testimonial, defendant's confrontation rights were not infringed because

---

[1] Rule 803(c)(6) defines "business record" as "[a] statement contained in a writing or other record of acts, events, conditions . . . made at or near the time of observation by a person with actual knowledge or from information supplied by such a person, if the writing or other record was made in the regular course of business and it was the regular practice of that business to make it[.]" N.J. R. Evid. 803(c)(6). Rule 803(c)(8) defines "public record" as "a statement contained in a writing made by a public official of an act done by the official or an act, condition, or event observed by the official if it was within the scope of the official's duty either to perform the act reported or to observe the act, condition, or event reported and to make the written statement[.]" N.J. R. Evid. 803(c)(8).

defense counsel had an ample opportunity to cross-examine Goebel, under whose direction the map was created." (ECF No. 10-30 at 30; ECF No. 10-14 at 1.)

Implicit in Petitioner's challenge of the Trial Map is that Goebel was not an "author" of the Trial Map, and therefore his presence at trial did not alter its status as hearsay. The record does not support Petitioner's argument. As the record establishes, the Trial Map was created by a team of engineers, who faithfully replicated a relevant section of the official map adopted by the city council, albeit at a larger scale, presumably for the ease of presentation at trial. As such, in creating the Trial Map, one quality mattered the most above all else: accuracy. To that effect, Goebel testified that he was the supervisor of the team charged with creating the Trial Map, and that he had spot-checked the work done by his subordinates in preparing it. It is clear to this Court that Goebel's contributions were essential to the map's creation—he was the ultimate arbiter of its accuracy. To argue that he was not an author of the Trial Map is to ignore the reality that it was created by a team of engineers, not by one particular individual; there was not one definitive "author" of the Trial Map. Goebel's presence at trial, as an author of the Trial Map, rendered it not a violation of the Confrontation Clause. As the Supreme Court held in *Bullcoming v. New Mexico*, 564 U.S. 647, 657 (2011), the Confrontation Clause requires the authentication of testimonial evidence by a person who certified the evidence, personally performed the work to produce the evidence, or observed the performance of such work—Goebel clearly, at the very least, both certified the Trial Map as well as observed the performance of his subordinates in creating the map, squarely within what *Bullcoming* requires.

The Court is mindful, however, that Petitioner's claim may also be construed another way—since the Trial Map was merely a recreation of the official map, and because no author of the official map testified at trial, the Trial Map was still hearsay, irrespective of Goebel's presence

at trial. As stated above, the appellate court addressed this construction, by holding that the Trial Map may be admitted as public record. Indeed, Petitioner does not allege, and there is no evidence showing, that the official map was somehow created for the purposes of Petitioner's trial. Hence, there can be no argument that the official map was not public record; as the record shows, it was officially adopted by the city council for generalized purposes. (*See* ECF No. 10-13 at 30.) In fact, its status as the official map adopted by city council would have made the map judicially noticeable. *See* N.J. R. Evid. 201(b) ("Facts which may judicially noticed include . . . specific facts and propositions of generalized knowledge which are capable of immediate determination by resort to sources whose accuracy cannot reasonably be questioned."); *United States v. Rio Grande Dam & Irrigation Co.*, 174 U.S. 690, 694 (1899) (taking judicial notice of an official map of the territory of New Mexico and of the United States); *Chamberlain v. 625 Orleans, LP*, No. 11-0140, 2011 WL 1627080, at *2 n.1 (E.D. Tex. Apr. 18, 2011) (finding that official maps are judicially noticeable); *McIntyre v. Div. of Youth Rehab. Servs.*, 795 F. Supp. 668, 673 n.4 (D. Del. 1992) (taking judicial notice of the Official State Highway Map of Delaware). Therefore, the Court finds that the admission of the Trial Map, either as an independently created document or as a derivative work of the official map, did not violate the Confrontation Clause and, as such, the state court's decision was a reasonable application of Supreme Court precedent under *Giles* and *Bullcoming*, based on a reasonable determination of the facts.

### iii.    Prosecutorial Misconduct

Although Petitioner does not explicitly raise this claim, the Court construes Petitioner's contention that "the prosecutor's attempt to bolster the [narcotics] officers' testimony simply by virtue of their being police officers was inappropriate," (ECF No. 1 at 19), as alleging a claim of prosecutorial misconduct for improperly vouching for a witness.  In particular, Petitioner alleges that the following statement during closing argument by the prosecutor constituted improper vouching:

> So what I'm saying to you folks is that you have a choice.  In this case, when it comes to the facts of this case, the choice in front of you I will submit is as follows, you have a choice to believe the testimony of two veteran narcotic's (sic) officers who you had an opportunity to sit here, watch, and listen to and evaluate.  You have a choice to find them credible or you can find the self-serving statements of a convicted felon.  That's your choice.

(ECF No. 1 at 20.)  The state appellate court found that the prosecutor did not vouch for the witnesses by making the above statement, and that Petitioner did not timely object to the statement. (ECF No. 10-14 at 9.)

In order for a prosecutorial misconduct claim to warrant federal habeas relief, the prosecutor's comments must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Darden v. Wainwright*, 477 U.S. 168, 180 (1986) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)).

> The prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.

*United States v. Young*, 470 U.S. 1, 18-19 (1985). However, when a prosecutor's statement "contained no suggestion that he was relying on information outside the evidence presented at trial," and "when viewed in context . . . cannot be read as implying that the prosecutor had access to evidence outside the record," then the prosecutor had not improperly vouched for a witness. *Id.* at 19; *see United States v. Brown*, 54 F. App'x 342, 345 (3d Cir. 2002) (stating that to claim improper vouching, a petitioner must establish that "(1) the prosecutor [] assure[s] the jury that testimony of a government witness is credible; [and] (2) this assurance [is] based on either the prosecutor's personal knowledge or other information not contained in the record") (quoting *United States v. Saada*, 212 F.3d 210, 225 (3d Cir. 2000)).

The Court finds the state court's determination—that the prosecutor did not improperly vouch for the officer witnesses—reasonable. Although the prosecutor did refer to the witnesses' status as police officers in the closing statement above, that was not information outside of the record—it is implausible that the jury was not aware of that fact long before the prosecutor explicitly stated so during closing. The prosecutor did not state that the jury should believe the officers' testimony over that of Petitioner's; he simply stated that the jury had a choice as to who they would believe. The decision whether to believe the testimony of police officers or that of a criminal defendant, who in this case was a convicted felon, is a choice many juries in many criminal trials must make routinely. It was reasonable for the state court to find that the prosecutor did not improperly vouch for the officers; the record supports the conclusion that he did not rely on evidence not already presented to the jury, but merely reminded the jury of its responsibilities and obligations present in almost every single criminal trial. It was certainly reasonable to conclude that the statement did not "infect[] the trial with unfairness as to make the resulting conviction a denial of due process"—indeed, holding otherwise would have been a gross

15

mischaracterization of the impact it had on the jury, when it should have been so obvious to the jury as to render the statement unnecessary and superfluous. *See United States v. Walker*, 155 F.3d 180, 187 (3d Cir. 1998) ("[W]here a prosecutor argues that a witness is being truthful based on the testimony given at trial, and does not assure the jury [of] the credibility of the witness based on his own personal knowledge, the prosecution is engaging in proper argument and is not vouching."); *Baker v. Wenerowicz*, No. 13-6329, 2014 WL 6823590, at *8 (E.D. Pa. Dec. 4, 2014) (finding the prosecutor's closing statement referring to facts already presented and known to the jury not improper because it "was in fact nothing more than a reminder to the jury of evidence that was actually presented to it"). Accordingly, the state court's decision was a reasonable application of Supreme Court precedent based on a reasonable determination of the facts. Relief on this ground is denied.

### D. Jury Instructions

Next, Petitioner alleges that the trial court erred because it failed "to explain to the jury the law with references to the facts of the case or the defense theory of the case," and that its jury instructions "included extraneous portions of statutes not charged." (ECF No. 1 at 21.) Petitioner's challenge to the jury instructions themselves stems from his allegations that, on the assault charges, the trial court had given the jury instructions on two different theories for conviction, one based on the officers being "in performance of their duties," another based on their actual status as law enforcement officers. (*Id.* at 23.) Petitioner contends that because his assault charge was only based on the former theory, the instructions relating to the latter theory were unconstitutional. (*Id.*) Likewise, Petitioner contends that because he was charged only for the "purposely attempting to cause bodily injury" theory of the crime, the trial court's instructions based on the "purposely, knowingly or recklessly caused bodily injury" theory of the crime were similarly unconstitutional.

(*Id.*) Petitioner made the same argument with regard to the resisting arrest charge, contending that the trial court instructed the jury on two different theories of the crime, when the indictment only charged Petitioner with one. (*Id.* at 24.)

Petitioner raised this claim on direct appeal, and the appellate court held that (1) there was no obligation by the trial court to reference the facts of the case in the jury instructions, and in fact properly refrained from doing so, (ECF No. 10-14 at 11-12), and (2) the trial court did not err by quoting the entire statutory language of the offenses charged, even if the State had only indicted Petitioner based on certain subsections, (*id.* at 14). The appellate court further found Petitioner had "ample notice that he was being charged with assaulting a uniformed officer, and that the State could have relied upon either alternative theory specified by [the relevant statutes]." (*Id.* at 15.) The appellate court also found that because the jury had acquitted Petitioner of the assault charge on Officer Burgess, and he was not found guilty of the more serious resisting arrest charge, the jury was not confused or misled by the trial court's jury instructions. (*Id.* at 16-17.)

With regard to Petitioner's contention that the trial court should have given instructions that referred to the facts of the case and/or the defense theory of the case, Petitioner's contention is unsupported. Indeed, another court in this district had dealt with a similar claim on a § 2254 petition, and found that "due process does not require the [jury] instructions to explain the elements of [the offense] with reference to the facts of the case." *Ingram v. Hendricks*, No. 03-2850, 2005 WL 2807208, at *3 (D.N.J. Oct. 25, 2005). A habeas challenge to state jury instructions must "point to a federal requirement that [the] jury instructions . . . must include particular provisions," or "demonstrate that the jury instructions deprived him of a defense which federal law provided to him." *Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3d Cir. 1997). Petitioner has not done so here.

With regard to Petitioner's contention that the trial court erred by including extraneous instructions, the Supreme Court recently dealt with a similar issue in *Lopez v. Smith*, 135 S. Ct. 1 (2014). In *Lopez*, the defendant was charged with first-degree murder. *Id.* at 2. The prosecution, during trial, focused on a theory that the defendant had committed the murder himself, while the defense had suggested that former employees of the defendant had committed the crime. *Id.* At the close of evidence, the prosecution requested a jury instruction based on a theory of aiding-and-abetting, and the trial court granted that request. *Id.* The defendant was convicted of the crime by the jury, with no explanation as to which theory the jury relied upon. *Id.* The state supreme court ultimately affirmed the conviction. *Id.* at 3. On federal habeas review, the district court granted habeas relief, and the Ninth Circuit affirmed. *Id.* Relying heavily on its own precedent, the Ninth Circuit reasoned that although the murder charge was sufficient to put the defendant on notice that he could be convicted on an aiding-and-abetting theory, nevertheless because the prosecution did not introduce that theory until it requested the jury instruction, the defendant's due process right was violated because he was not put on notice of the alternative theory. *Id.* at 3-4.

The Supreme Court reversed, finding that its own precedent did not "clearly establish[] that a prosecutor's focus on one theory of liability at trial can render earlier notice of another theory of liability inadequate." *Id.* at 4. Without such case law by the Supreme Court, habeas relief was not warranted. *Id.*; *see also id.* at 5 ("Absent a decision of ours clearly establishing the relevant standard, the Ninth Circuit had nothing against which it could assess, and deem lacking, the notice afforded respondent by the information and proceedings."). Although the *Lopez* case dealt with the issue of notice, its holding implies that the inclusion of the aiding-and-abetting jury instruction was *not* in violation of clearly established Supreme Court law.

18

Here, the appellate court explicitly found that Petitioner had adequate notice of the alternative theories with regard to the assault and resisting arrest charges. Indeed, as the appellate court found, the different theories of the crime were enumerated together within the relevant statutes. (ECF No. 10-14 at 14.) It was reasonable for the appellate court to hold that Petitioner's highly technical reading of the indictment and the relevant statutes was insufficient to establish that Petitioner lacked adequate notice of the alternative theories, when Petitioner was put on notice that he was being charged under those specific statutes. Given the finding that Petitioner had adequate notice of the charges and their possible theories of conviction, under *Lopez*, the trial court's inclusion of jury instructions based on those theories did not violate clearly established Supreme Court precedent. Thus, the state court's decision was not an unreasonable application of clearly establish Supreme Court law, nor was it based on an unreasonable determination of the facts. As such, the Court denies relief on this ground.

### E. Ground V – Choice of Counsel

The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. This right includes the right to a counsel of a defendant's choice, when that defendant does not require appointed counsel. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). Such right, however, "is circumscribed in several important respects." *Id.* (quoting *Wheat v. United States*, 486 U.S. 153, 159 (1988)). "[A] trial court[ has] wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar." *Id.* at 152 (citing *Wheat*, 486 U.S. at 163-64 and *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983)). Courts have the power "to make scheduling and other decisions that effectively exclude a defendant's first choice of counsel." *Id.* Pursuant to the Supreme Court's decision in *Morris*, a court can deny a defendant's right to a counsel of his choice

when the defendant's "belated requests to be represented by [substitute counsel] were not made in good faith but were a transparent ploy for delay." 461 U.S. at 13.

Here, it appears that Petitioner was originally represented by a court-appointed counsel, but Petitioner alleges that he requested a substitution of counsel of his choosing "[t]he weekend before January 7, 2008," (ECF No. 1 at 26), when trial was scheduled to start on January 8, 2008, (*id.* at 27). Petitioner further alleges that, on January 7, 2008 in open court, neither his appointed counsel, the trial court, nor the prosecutor objected to this request, although the trial court did state that it "would not be giving him any additional postponements and they w[ere] going forward with the trial."[2] (*Id.* at 26-26.) Petitioner does not allege that he objected to that condition; indeed, given the lateness of Petitioner's request, the Court finds that conditional acceptance by the trial court more than reasonable. However, the next morning, when trial was scheduled to start, Petitioner's new counsel did not arrive on time, but his appointed counsel was present. (*Id.* at 27.) After some discussion, the trial court decided to proceed to trial with the appointed counsel, and allegedly told Petitioner that "if the other attorney shows up he can substitute if he wants." (*Id.* at 28.)

Based on these allegations, Petitioner argues that his right to counsel of his choice was violated because the trial court insisted on proceeding with the trial when his new attorney did not arrive on time. Although Petitioner could have raised this claim on direct appeal, it was not raised until review for post-conviction relief ("PCR"), and the PCR trial court held that:

> Finally, the Petitioner baldy asserts that he was denied the counsel of his choice. The Petitioner claims that he wanted a new attorney, hired a new attorney, and this Court denied his request for an adjournment. The Petitioner does not and cannot identify a single instance in the record or otherwise to substantiate this claim. The Public Defender's Office provided the Petitioner with competent, adequate counsel.

---

[2] Petitioner's new counsel was not present in court on that date, for reasons unexplained.

(ECF No. 10-26 at 6.) The PCR appellate court affirmed without elaborating its reasoning. (ECF No. 10-36 at 9.)

The Court construes the state court's ruling as finding that Petitioner's allegations were unsupported by evidence.[3] Nevertheless, even if Petitioner's allegations are true, he would not be entitled to habeas relief. The Court finds nothing unreasonable about the trial court's alleged conduct. The trial court did not outright deny Petitioner his choice of new counsel, and in fact expressly allowed it. The trial court accepted Petitioner's request on the condition that trial would not be postponed or delayed, and there is no allegation that Petitioner objected. On the morning of trial, it was Petitioner's new counsel who was at fault for not appearing on time, if Petitioner's allegations are to be believed. In fact, there is no allegation that the new counsel eventually made an appearance at all. Given the lateness of Petitioner's request to substitute counsel, such conduct could justify denying his request altogether under *Morris*. Regardless, other courts, in applying *Gonzales-Lopez* and/or *Morris*, have found denials of requests for continuance on the eves of trial reasonable, a request Petitioner did not even make here. *See Miller v. Blacketter*, 525 F.3d 890, 897 (9th Cir. 2008) (finding a denial of continuance by the state court reasonable when it was made the morning trial was set to begin); *William v. Hendricks*, No. 00-4795, 2009 WL 2169230, at *4 (D.N.J. July 21, 2009) ("Thus, when a criminal defendant first makes a trial court aware of dissatisfaction with counsel on the eve of trial, it may not be a denial of the right to counsel of choice for the trial court to deny a continuance for the purposes of substituting or finding new

---

[3] The Court need not rely on the state court's explicit ruling, and instead may rely on an alternative theory in finding the state court's ruling as reasonable, while accepting Petitioner's allegations as true. *See Collins v. Sec. of Pa. Dep't of Corr.*, 742 F.3d 528, 548 (3d Cir. 2014) ("AEDPA requires that [federal courts] 'determine what argument or theories supported or . . . could have supported, the state court's decision.'") (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

counsel."); *United States v. Hanhardt*, 155 F. Supp. 2d 861, 871 (N.D. Ill. 2001) (finding denial of continuance based on new counsel's scheduling conflict reasonable).

Here, it was Petitioner's own choice to substitute counsel two days before trial, and through no fault of anyone who was present when trial was to begin, his new counsel did not appear. The trial court was well within reason to proceed to trial with the appointed counsel; after all, the appointed counsel actually appeared at trial on time. There was no reason to believe that the appointed counsel was not prepared for trial, given that Petitioner had only informed him about Petitioner's desire to substitute a mere two days before trial, and that he was actually present for trial, unlike Petitioner's new counsel. Accordingly, the Court finds the state court's decision to be a reasonable application of Supreme Court precedent, based on a reasonable determination of the facts, and denies relief on this ground.

### F. Ground VI – Cumulative Errors

Finally, Petitioner contends that the aforementioned alleged errors, in the aggregate, violated his due process rights. "The cumulative error doctrine allows a petitioner to present a standalone claim asserting the cumulative effect of errors at trial that so undermined the verdict as to constitute a denial of his constitutional right to due process." *Collins*, 742 F.3d at 542. "Individual errors that do not entitle a petitioner to relief may do so when combined, if cumulatively the prejudice resulting from them undermined the fundamental fairness of his trial and denied him his constitutional right to due process." *Id.* (quoting *Fahy v. Horn*, 516 F.3d 169, 205 (3d Cir. 2008)).

The Court rejects this argument. In addressing each of the claims above, the Court did not simply find that Petitioner was not entitled to relief on each ground; in fact, the Court found that the state court made no error under federal law on any of the aforementioned grounds. Such

finding precludes a holding that their cumulative effects resulted in some constitutional violation. *See United States v. Herrera-Genao*, 419 F. App'x 288, 296 (3d Cir. 2011) ("Herrera-Genao complains only of the cumulative effect of the preceding claims; because we have found no error regarding those claims, Herrera-Genao's claim of cumulative error also fails."). Hence, the Court denies relief on this ground.

### G. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. Thus, no certificate of appealability shall issue.

## IV.    CONCLUSION

For the reasons set forth above, the Petition is DENIED, and the Court DENIES a certificate of appealability.

_____

**Claire C. Cecchi, U.S.D.J.**

Dated: November 28, 2017

23